IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARGARET DAVIS, | CASE NO. 1:05-cv-00026 OWW TAG |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS ON PLAINTIFF'S APPEAL FROM ADMINISTRATIVE DECISION |
| vs. | |
| JO ANNE B. BARNHART, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Margaret Davis ("claimant") seeks judicial review of an administrative decision denying her claim for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 401 et seq., and her claim for supplemental security income under Title XVI of the Act, 42 U.S.C. § 1381 et seq. (Doc. 1). Pending before the Court is claimant's appeal from the administrative decision of the Commissioner. Claimant filed her complaint on January 6, 2005 (Doc. 1), and her opening brief on September 22, 2005. (Doc. 10). The Commissioner filed her opposition on October 25, 2005. (Doc. 11). Claimant's reply brief was filed on November 8, 2005. (Doc. 12).

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the Commissioner consented to proceed before a United States Magistrate Judge. (Doc. 5). Claimant has not consented.

**JURISDICTION**

On April 22, 2002, claimant protectively filed[1] an application for supplemental security income under Title XVI of the Act. (Administrative Record ("AR") 462). This was followed, on

---

[1] To qualify as an effective supplemental security income claim, an application for benefits must be submitted on a prescribed form. 20 C.F.R. § 416.305. However, a written statement indicating a person's intent to claim benefits can, if certain coincident and subsequent requirements are met, establish a protective filing date. 20 C.F.R. § 416.340.

July 16, 2002, by an application for disability insurance benefits under Title II.  (AR 111-13). Claimant's applications were denied initially (AR 96-99) and on reconsideration (AR 102-06) and, after a hearing on April 8, 2004 (AR 29-76), Administrative Law Judge ("ALJ") Bert C. Hoffman, Jr. found that claimant was not disabled in a written determination dated May 7, 2004.  (AR 15-22). The Appeals Council denied claimant's request for review on November 8, 2004 (AR 6-8), leaving the ALJ's decision of May 7, 2004, as the final decision of the Commissioner.  On January 6, 2005, within sixty days of the Appeals Council decision, claimant timely appealed to the District Court pursuant to 42 U.S.C. § 405(g).  (Doc. 1).

## STATEMENT OF FACTS

Claimant was born on April 1, 1946, making her 58 years old at the time of ALJ Hoffman's decision.  (AR 22, 33).  At the hearing, claimant testified that she had been educated through the eighth grade.  (AR 33).  Regarding her work history, claimant testified that she last worked in 1994 as a waitress at a Denny's in Fresno, California.  (AR 33-34).  Prior to that job, which she held for "a couple of years," claimant had been a waitress at another Denny's and at a truck stop.  (AR 34). Claimant testified that she left her job because of the mental stress it posed (she could not stay focused on what she was doing) and because her back and hips were "giving out" on her.  (AR 34).

As to her medical condition, claimant testified that she has back, neck, hip, foot, shoulder and arm problems related to osteoporosis and osteoarthritis.  (AR 38-39).  Claimant stated that her feet have bunions, also related to the osteoarthritis, which she testified prevent her from walking very far. (AR 39).  Claimant also stated that she has breathing problems due to emphysema, causing her to become out of breath after walking a block, but that she still smokes one-half pack of cigarettes daily.  (AR 39-40).  Claimant further testified that she suffers daily headaches that sometime cause nausea and require her to lay down and rest.  (AR 41).  As to her mental problems, claimant testified that she suffers from depression and sometimes has suicidal thoughts.  (AR 41).  Claimant stated that she feels depressed five or six times a week.  (AR 42).  Claimant also stated that she hears voices, but less so now that she is on medication.  (AR 50-51).  Finally, claimant testified that she has difficulty in concentrating, that she sometimes seeks isolation and has difficulty sleeping.  (AR 52-53).

As to her daily life activities, claimant testified that she is single, but lives with a man, identified in the hearing as "Glen," who himself is disabled due to a stroke. (AR 33, 43, 48-49). Claimant testified that Glen's daughter comes by daily to help him and that claimant herself does not assist with his needs. (AR 49). However, Claimant also testified that she helps to feed Glen, can help button his shirt, and can get him drinks from the refrigerator. (AR 49-50, 54). In terms of her activities not pertaining to Glen, claimant stated that she does not cook, does not clean except to dust, does some laundry, does some dishes, drives short distances, will only shop at the grocery store for a few items at a time, occasionally visits with friends, watches television (but does not remember what she sees), sometimes reads fashion magazines, and styles her own hair. (AR 55-66).

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that claimant is not only unable to do her previous work but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if she is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If she is not, the decision maker proceeds to step two, which determines whether claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c).

If claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d),

416.920(d); 20 C.F.R. § 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed impairments, claimant is conclusively presumed to be disabled.  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents claimant from doing work performed in the past.  If claimant is able to perform her previous work, she is not disabled.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f).  *See* Bowen v. Yuckert, 482 U.S. 137 (1987).

The initial burden of proof rests upon a claimant to establish a *prima facie* case of entitlement to disability benefits.  Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971).  In terms of the five step sequential evaluation process, the Ninth Circuit has held that "[t]he burden of proof is on the claimant as to steps one to four," while at the same time noting that an ALJ's "*affirmative duty* to assist a claimant to develop the record . . . complicates the allocation of burdens" such that "the ALJ shares the burden at each step."  Tackett v. Apfel, 180 F.3d 1094, 1098 & n.3 (9th Cir. 1999)(italics in original).  The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation.  The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform.  Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir. 1984).

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision.  See, 42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence.  *See* Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005)("'[w]e may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error'")(quoting Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002)); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985); Delgado v. Heckler, 722 F.2d 570, 572 (9th Cir. 1983) ("[t]he [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence")(*citing* 42

U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance.  McAllister v. Sullivan, 888 F.2d 599, 601-602 (9th Cir. 1989); Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 576 (9th Cir. 1988).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld.  Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner.  Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting* Kornock v. Harris, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence.  Richardson, 402 U.S. at 400.  If evidence supports more than one rational interpretation, the Court must uphold the decision of the ALJ.  Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).  Moreover, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive.  Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1988).

## ALJ'S FINDINGS

**Step One**

The ALJ found at step one that claimant had not engaged in substantial gainful activity since the alleged onset of her disability.  (AR 21).

**Step Two**

At step two, the ALJ found that claimant suffered from major depressive disorder with psychotic features, an impairment which he considered "severe."  (AR 21).

**Step Three**

At step three, the ALJ assessed whether claimant's impairment, while severe, was among

5

those acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Listing of Impairments). The ALJ concluded that claimant's impairment did not meet or equal any of the listed impairments. (AR 21).

**Step Four**

At step four, the ALJ found that claimant had the residual functional capacity to lift and carry 50 pounds frequently and 100 pounds occasionally, could stand and walk 6 hours out of an 8-hour workday, and could sit 6 hours in an 8-hour workday. (AR 22). The ALJ also found that claimant retained the mental ability to perform simple and repetitive tasks, as well as detailed and complex tasks, to accept instructions from supervisors, to interact and relate appropriately, to maintain regular attendance at work and to complete a normal workday without interruption from a psychiatric disorder. (*Id.*) Based upon these limitations, the ALJ concluded that claimant could perform her past relevant work as a waitress and, therefore, was not under a disability as defined in the Social Security Act. (*Id.*)

**Step Five**

Having determined that claimant could perform her past relevant work, the ALJ did not proceed to step five of the sequential analysis.

**ISSUES**

Claimant's Opening Brief raised the following issues for consideration:

A. Whether the ALJ erred in discrediting claimant's testimony.

B. Whether the ALJ improperly disregarded lay witness evidence.

C. Whether the ALJ improperly disregarded reports of claimant's treating physician.

D. Whether the ALJ erred in finding that claimant could perform her past relevant work.

This Court must uphold the Commissioner's determination that claimant is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

///

///

# DISCUSSION

**A.     Claimant's Testimony**

Claimant asserts that the ALJ improperly rejected her testimony. (Doc. 10, pp. 15-18). The Court finds to the contrary.

A two step analysis applies at the administrative level when considering claimant's subjective credibility. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996). First, claimant must produce objective medical evidence of an impairment and show that the impairment could reasonably be expected to produce some degree of symptom. Id. at 1281-82. If claimant satisfies this test - and if there is no evidence of malingering - the ALJ can reject claimant's testimony about the severity of her symptoms "only by offering specific, clear and convincing reasons for doing so." Id. at 1281. Such specificity is crucial so as to enable effective judicial review. *See* Mersman v. Halter, 161 F. Supp. 2d 1078, 1086 (N.D. Cal. 2001)("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); SSR 96-7p (the ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

Here, ALJ Hoffman first summarized claimant's medical history (AR 16-19) and concluded that it established major depressive disorder with psychotic features. (AR 19). The ALJ also reported claimant's own testimony as to the severity of her condition. (*Id.*) Upon setting forth this evidence, the ALJ went on to cite a number of specific, clear and convincing reasons - all supported by substantial evidence in the record - in support of his conclusion that claimant's condition simply was "not as severe as she alleges." (*Id.*) ALJ Hoffman noted the following:

I.     Contrary to claimant's statements that she sometimes hears voices or has delusions, and further that she has problems sleeping, the ALJ noted that claimant's own treating physician, Orlando T. Collado, M.D., reported that she had few mental status abnormalities. (AR 19, 396). A progress report by Dr. Collado dated January 24, 2004 (specifically referenced by the ALJ), reflected that the problems reported by claimant in her testimony did not exist as of that visit. Rather, Dr. Collado found that claimant's memory, judgment and insight were all "intact," her

speech was "normal," she experienced no hallucinations, delusions, suicidality or homicidality, and she had "no problem" in terms of her sleep, appetite, or orientation as to person, time, place and situation. (AR 396).

  ii. Also contrary to claimant's reported depressive symptoms, such as her inability to concentrate, were the findings of consultative examiner Charles House, Ph.D. (AR 20, 303-09). Dr. House found – and the ALJ reported – that claimant's memory was "intact," her concentration and attention were "good," and that her problem solving skills were "intact and commensurate with intelligence." (AR 20, 308).

  iii. As to the degree of claimant's alleged physical pain, the ALJ noted inconsistencies between claimant's testimony and her remarks to a physician, as well as inconsistencies between claimant's testimony and her conduct. While claimant told her physician that she quit her job because of low back and neck pain, her testimony at the administrative hearing first referenced mental stress as the reason, although she added that her back and hips were "giving out" at the time. (AR 20, 34, 188). Likewise, the ALJ correctly noted claimant's testimony that she drives a car, shops, does some laundry, goes out to lunch with her sister and assists (however minimally) with the care of a sick friend. (AR 20, 49-50, 54-56). Also noted by the ALJ was a lengthy trip that claimant took with her sister, driving from California to Idaho without any overnight stops. (AR 20, 45-48).

  In light of the foregoing, the Court finds that ALJ Hoffman sufficiently articulated a number of inconsistencies justifying his decision to discredit claimant's subjective complaints (and her corresponding view of her exertional capacity), and that these inconsistencies were supported by substantial evidence in the record. See Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)("the ALJ may consider [claimant's] reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains"); Brawner v. Secretary of Health and Human Services, 839 F.2d at 433 (upon giving "great weight to [the] ALJ's credibility assessment," the court concluded that it was supported by substantial evidence).

///

**B.     Lay Witness Testimony**

Claimant next asserts that the ALJ improperly disregarded the lay testimony of her sister Patti Harper, who testified at the hearing, and of her significant other, Glen Rowe, who submitted a third party questionnaire. (Doc. 10, pp. 18-19). Again, the Court finds to the contrary.

Claimant's sister, Patti Harper, testified primarily to a road trip she took with claimant, to a suicide attempt that happened at an unspecified time in the past, and to claimant's current emotional state. (AR 68-73). This testimony was referenced by the ALJ in his written determination. (AR 19). Claimant's significant other, Glen Rowe, wrote in a third party questionnaire that claimant had difficulty sleeping, required his help with grooming given her back pain, forgets a lot, has difficulty concentrating and has emotional problems. (AR 143-47). This questionnaire was dated August 30, 2002. (AR 148).

The Commissioner's regulations state that, in addition to medical sources, "we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work. Other sources include . . . spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy." 20 C.F.R. § 404.1513(d)(4). As is evident, the regulation itself does not impose an absolute rule. Rather, as stated in Smolen v. Chater, 80 F.3d at 1288, lay evidence is considered when, for example, "medical records are sparse and do not provide adequate documentation of [] symptoms." Moreover, it is settled that an ALJ "need not discuss *all* evidence presented to her. Rather, she must explain why 'significant probative evidence has been rejected.'" Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (italics in original)(upholding ALJ's decision even where ALJ failed to discuss testimony of two lay witnesses and one medical witness). *See* Parks v. Sullivan, 766 F. Supp. 627, 635 (N.D. Ill. 1991)("the ALJ does not need to meet the impossible burden of mentioning *every* piece of evidence")(italics in original).

Here, claimant's medical records were not sparse and provided more than adequate documentation of her impairments. These records, detailed at some length by ALJ Hoffman in his written determination, included extensive treatment notes and reports by claimant's treating physician Dr. Collado, as well as multiple consultative examinations both as to claimant's mental and physical status. (AR 16-18). As to her mental status, and as noted above, claimant's treating

physician found that claimant's memory, judgment and insight were all "intact," her speech was "normal," she experienced no hallucinations, delusions, suicidality or homicidality, and she had "no problem" in terms of her sleep, appetite, or orientation as to person, time, place and situation. (AR 396). Moreover, this medical report dated January 2, 2004 addressed claimant's status while under control through medication, unlike the August 30, 2002 third party questionnaire submitted by Glen Rowe, claimant's significant other. (*Compare* AR 396 *with* AR 148). *See* Roth v. Shalala, 45 F.3d 279, 282 (9th Cir. 1995)("'If an impairment [is] controlled by treatment or medication, it cannot be considered disabling'")(*quoting* Stout v. Shalala, 988 F.2d 853, 855 (8th Cir. 1993)). As to claimant's lumbar-related impairments, a consultative examination established that these were minor, with no muscle spasms or deformities, no pain on a straight leg raising test (a key factor for assessing lumbosacral disability)[2], essentially normal gait, and x-rays showing only mild degenerative joint disease and no radiculopathy. (AR 16-17, 227-31). The Court finds that these medical reports, and others cited by ALJ Hoffman, constitute ample, and certainly substantial, evidence in support of the ALJ's determination. In sum, and quoting from the Ninth Circuit in Vincent v. Heckler in disposing of a similar argument, "[t]he ALJ properly discounted [i.e., did not reference in a written determination] lay testimony that conflicted with the available medical evidence." Vincent v. Heckler, 739 F.2d at 1395.

///

---

[2] In assessing whether a lower back spinal disorder meets or equals a listed impairment and is therefore disabling by definition, a positive straight leg test is the only criteria considered over and above those factors applicable to disorders of the spine generally. The pertinent listing states:

> Disorders of the spine (e.g., herniated nucleus pulposis, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord, [w]ith:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensor or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)."

20 C.F.R. Pt. 404, Subpt. P, App. 1, §1.04. As noted, claimant here had a normal straight leg test. (AR 16, 229).

**C.     Treating Physician Reports**

Claimant contends that ALJ Hoffman improperly rejected evidence from her treating physician. (Doc. 10, p. 20). In support of this contention, claimant's asserts that the assessments of two consultative examinations – one by Rustom F. Damania, MD. and another by Shireen R. Damania, M.D. – were either improperly reported by the ALJ or unfounded in their own right. (Doc. 10, pp. 20-22). These points are not well taken..

Claimant's first argument pertains to a physical consultative examination by Dr. Rustom Damania. (Doc. 10, pp. 20-21). As to this examination, claimant faults only the ALJ's reporting of Dr. Rustom Damania's findings. As claimant states: "The characterization of 'mild' degenerative joint disease set forth by the ALJ is not to be found in the evidence." (Doc. 10 p. 21).

The Court disagrees, for claimant has misread the administrative record. Dr. Rustom Damania's diagnosis was precisely as reported by the ALJ, namely, "mild degenerative joint disease":

> "**DIAGNOSIS:**
> 1.    Mild degenerative joint disease of the lumbar and cervical spine with no clinical evidence of radiculopathy."

(*Compare* AR 17 *with* AR 230).

Claimant's second argument pertains to a psychiatric consultative examined by Dr. Shireen Damania. (Doc. 10, pp. 21-22). As to this examination, claimant faults Dr. Damania's reliance on an insufficiently "longitudinal" sampling of treatment history. (*Id.*) However, it is for the ALJ - not any one specific treating or examining physician - to compile and consider such a longitudinal picture. As stated in Social Security Ruling ("SSR") 83-15, 1983 WL 31245, at *1-2 (1983), "[t]he adjudicator must be alert to the particular problems that are often involved in evaluating mental impairments . . . . the adjudicator should recognize that the individual's level of functioning may vary considerably over time." Here, it is evident that ALJ Hoffman did just that. In assessing the degree of claimant's mental impairment, the ALJ not only referenced Dr. Shireen Damania's October 3, 2002 consultative examination in his written determination (AR 17, 221-24), but also a consultative examination by Dr. House dated May 23, 2003 and the treatment records of claimant's treating psychiatrist Dr. Collado, whose final treatment note was dated January 1, 2004. (AR 20,

303-09, 396).  In sum, and consistent with the obligations imposed by SSR 83-15, ALJ Hoffman appropriately reviewed claimant's mental impairment as it was reported longitudinally, *i.e.*, over time.  The Court finds there was no error in this regard.

A third point of error is raised by claimant in her reply brief, namely, that the ALJ improperly rejected the residual functional capacity assessment of her treating psychiatrist, Dr. Collado.  (Doc. 12, pp. 6-7).   Courts distinguish among the opinions of three types of physicians:  treating physicians, physicians who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians").  Lester v. Chater, 81 F.3d 821, 839 (9th Cir. 1995).  A treating physician's opinion is given special weight because of his or her familiarity with a claimant's physical condition.  Fair v. Bowen, 885 F.2d 597, 604-605 (9th Cir. 1989).  In order to reject a treating physician's ultimate conclusions, the ALJ must supply "clear and convincing" reasons.  Fair, 885 F.2d at 604-605.  However, when contradicted by another doctor, the ALJ may reject a treating physician's opinion upon giving "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)).  Finally, as to the nature of the reasons deemed sufficient to set aside a treating physician's opinion, courts within the Ninth Circuit have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports that are based substantially on the claimant's subjective complaints of pain as specific legitimate reasons for disregarding a treating or examining physician's opinion.  Flaten v. Secretary of Health & Human Services, 44 F.3d at 1453, 1463-64; Fair, 885 F.2d at 604.

In the instant case, ALJ Hoffman gave "[g]reat evidentiary weight [to] the well-documented treating source notes and longitudinal observations of Dr. Collado, Treating Physician."  (AR 20). However, the ALJ rejected Dr. Collado's ultimate conclusion as to claimant's residual functional capacity.  In so doing, he stated the following:

> No weight is given [Dr. Collado's] residual functional capacity opinion, as it appears completely fabricated with respect to her *marked* limitations and is internally inconsistent with the clinical notes, *e.g.*, no significant problems with personal hygiene, eating, sleeping, memory or auditory hallucinations.  As previously discussed, Dr. Collado noted

*marked* progress and that her condition is *stable*.  However, his opinion that the claimant has only *moderate* limitations in the areas understanding and remembering one or two step instructions, getting along with coworkers and peers, maintaining social appropriately behavior [sic], performing activities within a schedule, maintaining regular attendance and punctuality, does not preclude work activity and is given substantial weight [ ].  The claimant has daily activities far too numerous to justify any mental limitations." (AR 20) (italics in original).

Based on the foregoing, the Court concludes that ALJ Hoffman cited specific and legitimate reasons for discounting Dr. Collado's ultimate conclusion as to claimant's residual functional capacity, to wit, it was incompatible with his own medical observations and progress notes over time. (AR 20).  See Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 603 (9th Cir. 1999) (inconsistency between medical opinion and medical tests is an appropriate basis upon which to discount such opinion).  The Court therefore finds no error.

### D.   Past Relevant Work

Claimant contends that the ALJ erred in finding that she could perform her past relevant work as a waitress, step four of the sequential analysis.  (Doc. 10, pp. 11-15).  The argument is based entirely on claimant's alleged difficulty in interacting with supervisors, co-workers and the general public.  (*See* Doc. 10, p. 14; Doc. 12, p. 9).  The medical support cited by claimant in support of such deficiency was, in turn, largely based upon an October 3, 2002, consultative examination by Dr. Shireen Damania, who concluded upon examination that claimant "*might* have difficulty responding appropriately to co-workers, supervisors, and the public, because she indicates she does not like to 'be around crowds and cannot handle groups.'" (Doc. 10, p. 14; Doc. 12, p. 2; AR 224) (italics added).

Notwithstanding this report – a report mis-characterized in her favor by claimant[3] – the Court finds that substantial evidence supports the ALJ's conclusion, based on more recent evidence that claimant could indeed work with other people and, therefore, could perform her past relevant work as a waitress.  See Ukolov v. Barnhart, 420 F.3d at 1004 ("'[w]e may set aside a denial of benefits

---

[3] Dr. Damania's assessment was mis-characterized by claimant in her brief.  Dr. Damania stated only that claimant "might" have difficulty relating to co-workers and other people (AR 224).  In her brief, however, claimant wrote: "Dr. Damania finds that Plaintiff *would* have difficulty responding appropriately to co-workers" and other people. (Doc. 10, p. 14)(emphasis added).

only if it is not supported by substantial evidence or if it is based on legal error'")(*quoting* Thomas v. Barnhart, 278 F.3d at 954).

Thus, in his written determination, ALJ Hoffman reported accurately, and in detail, on the various mental status examination that formed the basis of his residual functional capacity assessment. These examinations included a comprehensive psychological evaluation conducted by Dr. House on May 23, 2003. The ALJ accurately summarized Dr. House's evaluation as follows:

> [Dr. House] observed the claimant was appropriately groomed and had good personal hygiene. She was alert, responsive, oriented and emotionally engaged. The claimant was pleasant and cooperative. Speech was normal, expressive and articulate. Thinking was logical and well organized. Mood was full range and affect was congruent. [Claimant] acknowledged her hallucinations were currently in remission. Dr. House noted a mini-mental status examination reflected intact cognitive functioning with no evidence of an impairment in attention, concentration or memory. Dr. House diagnosed depressive disorder, not otherwise specified, from history, but unobserved clinically. In a medical source statement, Dr. House stated the claimant will have no difficulties performing simple, as well as detailed and complex tasks, accepting instructions from supervisors, interacting appropriately with coworkers and the general public. He said she will have no difficulties maintaining regular attendance in the workplace and completing a normal workday without interruption from a psychiatric disorder. (AR 18, 303-09).

ALJ Hoffman gave "great evidentiary weight" to Dr. House's assessment, and it was consistent, in every respect, with his residual functional capacity determination:

> [C]laimant retains the mental abilities to perform simple and repetitive tasks, as well as detailed and complex tasks, to accept instructions from supervisors, to interact and relate appropriately, to maintain regular attendance in [the] work place [and] to complete a normal workday without interruption from a psychiatric disorder. (AR 20-21).

ALJ Hoffman also gave "[g]reat evidentiary weight" to the treating source notes and longitudinal observations of claimant's treating psychiatrist, Dr. Collado. (AR 20). As noted above and by the ALJ, Dr. Collado's progress report dated January 2, 2004 stated that claimant's memory, judgment and insight were all "intact," her speech was "normal," she experienced no hallucinations, delusions, suicidality or homicidality, and she had "no problem" in terms of her sleep, appetite, or orientation as to person, time, place and situation. (AR 396). Moreover, also as reported by the ALJ, Dr. Collado concluded that claimant had "only *moderate* limitations in the areas [of] understanding and remembering one or two step instructions, getting along with coworkers and

peers, maintaining social[ly] appropriate[] behavior, performing activities within a schedule, [and] maintaining regular attendance and punctuality." (AR 20).

Finally, the ALJ properly compared claimant's mental and exertional limitations to the Dictionary of Occupational Titles ("DOT") § 311.477-018, in order to determine whether claimant could perform her past relevant work as a waitress. (AR 21). See 20 C.F.R. § 404.1560(b)(2)("[w]e may use . . . the 'Dictionary of Occupational Titles'. . . to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity"); 20 C.F.R. § 404.960(b)(2)(same); Villa v. Heckler, 797 F.2d 794, 798 (9th Cir. 1986)("[t]he Secretary may rely on the general job categories of the *Dictionary* . . . as presumptively applicable to a claimant's prior work"). While the DOT contemplates that a waitress position involves "[d]ealing with PEOPLE," DOT § 311.477-018, substantial evidence – as noted above – supports the ALJ's determination that claimant did indeed retain the residual functional capacity to interact with people. *See* Ukolov, 420 F.3d at 1004 ("'[w]e may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error'")(quoted authority omitted).

**CONCLUSION AND RECOMMENDATIONS**

For the reasons discussed above, this Court finds no error in the ALJ's analysis and that the ALJ properly concluded claimant is not disabled. This Court further finds the ALJ's decision is supported by substantial evidence in the record as a whole and based on proper legal standards. Accordingly, this Court RECOMMENDS to DENY claimant's appeal from the administrative decision of the Commissioner of Social Security.

These Findings and Recommendations are submitted to the Honorable Oliver W. Wanger, the United States District Judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72-304. No later than thirty (30) days after service of the proposed findings and recommendations, any party may file written objections to these Findings and Recommendations with the Court and serve a copy on all parties and the Magistrate Judge and otherwise in compliance with this Court's Local Rule 72-304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations. Responses to objections shall be filed and served no later than ten (10) days after service of the objections and otherwise in compliance with

1 this Court's Local Rule 72-304(d).  A copy of the responses shall be served on the Magistrate Judge.

2 The District Judge will review the Magistrate Judge's Findings and Recommendations, pursuant to

3 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified

4 time may waive the right to appeal the District Judge's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th

5 Cir. 1991).

7 IT IS SO ORDERED.

8 Dated:   **July 5, 2006**                                            **/s/ Theresa A. Goldner**
   **j6eb3d**                                                 UNITED STATES MAGISTRATE JUDGE